947 So.2d 584 (2007)
Ronnie FERNANDER, Appellant,
v.
Mario BONIS, individually, Craig Scarlett, individually, and the City of Miramar, a Florida municipal corporation, Appellees.
No. 4D06-407.
District Court of Appeal of Florida, Fourth District.
January 3, 2007.
*586 Hugh L. Koerner of Hugh L. Koerner, P.A., Hollywood, for appellant.
Jamie A. Cole, Matthew H. Mandel and Gregory A. Haile of Weiss, Serota Helfman Pastoriza Cole & Boniske, P.A., Fort Lauderdale, for appellees.
SHAHOOD, J.
Appellant, Ronnie Fernander, appeals from the final judgment granting defendants' motion to dismiss his complaint. We affirm.
The extensive and somewhat complex facts giving rise to this case are necessarily set forth in this opinion as alleged in appellant's complaint. On August 3, 1997, Eusebio Christian gave Captain Mario Bonis of the Miramar Police Department a sworn statement describing a narcotics transaction with a man named "Steve," whom Christian said he had known a long time ago. Christian had agreed to purchase a kilogram of cocaine for Steve in exchange for a fee of $4,500 for Christian. Steve provided Christian with $15,000 purchase money for the deal.
Christian met with two men in Miramar and exchanged the money for two packages of what he thought was cocaine. When he returned to Steve with the packages, they discovered the packages contained dry-wall instead. Steve threatened to kill Christian and his family unless Christian provided him with $15,000 or a kilogram of cocaine. Christian contacted the FBI, who referred him to the City of Miramar Police Department. Christian agreed to assist the police as an informant in a sting operation with the goal of apprehending Steve and others.
As part of the sting operation, Christian arranged to meet Steve at a set place and time to give him a kilogram of cocaine. Members of the South Broward Drug Enforcement Unit set up surveillance of the location. Christian was approached at the location by Fernander's cousin, Marlon Butler. Christian entered Butler's car and law enforcement apprehended the men as the car began to leave. Butler was arrested.
Butler also agreed to work as an informant for the Miramar Police Department following his arrest. Butler gave Captain Bonis and Detective Hector Bertrand a sworn statement. According to Butler, Steve told him about being ripped off in the earlier cocaine transaction involving Christian. Butler had agreed with Steve to pick up Christian and drop him off for $100, knowing Christian would have cocaine *587 for Steve. Butler described Steve as a "big man." He said that Steve was a seven foot tall black male. He estimated Steve's weight as about the same as Detective Bertrand. He said Steve was a student at North Miami Beach Senior High School. Butler was the cousin of Fernander and Fernander's sister, Patrice. Patrice was married to a man named Steven Bailey, also known as "Steve." Fernander and Steven Bailey are therefore brothers-in-law.
Captain Bonis obtained Steve's cellular phone number from Butler's pager after Butler's arrest. Captain Bonis obtained a subpoena duces tecum for telephone records for Steve's telephone number. The records showed that the subscriber for the telephone was Ronnie Fernander and the billing address was in Fernander's name. Captain Bonis also obtained Fernander's driver's license photograph. On August 26, 1997, Christian gave another sworn statement to Captain Bonis. Christian identified Fernander as Steve by picking Fernander's photograph out of a photographic lineup of six African-American males. Christian stated in his identification that the photo he picked out was Steve, "with a little more weight." However, Christian was sure of the identification. Captain Bonis included the above information in a police report.
Captain Bonis submitted a probable cause affidavit to the Broward County State Attorney's Office in support of filing cocaine trafficking charges against Fernander. The affidavit stated that Fernander was positively identified under oath by an informant as Steve and listed Fernander as an alias for Steve. The probable cause affidavit described Fernander as 5'11", 190 lbs. On November 23, 1998, the State filed an information charging Fernander with trafficking in cocaine and issued a warrant for his arrest.
Butler was also charged with trafficking in cocaine for his part in the deal. He entered into a substantial assistance agreement with the State. On June 2, 1999, Butler took a polygraph examination at the Miramar Police Department. The polygraph examination and pre-test interview were conducted by Detective Craig Scarlett. Butler allegedly stated during the pre-test interview and the actual examination that Fernander had no part in the drug deal with Steve. Detective Scarlett concluded, however, that there was a ninety-eight percent probability that Butler was not truthful. Butler was later convicted of cocaine trafficking and sentenced to a minimum of fifteen years in prison for his role in the drug deal with Steve.
Fernander was arrested on August 2, 2000, on the warrant for trafficking cocaine. He remained in jail until approximately October 27, 2000. On September 11, 2002, Fernander's case was nolle prossed. The nolle prosse memorandum issued by the Assistant State Attorney stated that in comparing pictures of Fernander and the man purported to be Steve by Fernander's family, Steve resembled Fernander. The memorandum noted that the telephone records for the telephone used by Steve were in Fernander's name. The memorandum recalled that Christian had identified Fernander in the photo lineup, but had stated more than once "with a little more weight." The memorandum stated that Butler had been deposed and testified Fernander was not Steve and that Steve was married to Butler's cousin. The memo expressed doubt of the possibility of convicting Fernander in light of Butler's testimony.
Fernander filed a nine-count complaint containing various federal and state claims against the City as well as Captain Bonis and Detective Scarlett in their individual capacities. The complaint alleged: violation *588 of Fernander's Fourth Amendment rights pursuant to 42 U.S.C. § 1983; a claim against Captain Bonis in his individual capacity for malicious prosecution pursuant to 42 U.S.C. § 1983; state law claims of malicious prosecution and false imprisonment; causes of action against the City and Scarlett individually based on the allegedly negligent performance and reporting of the polygraph examination administered to Butler; a cause of action against the City for negligent infliction of emotional distress; and a claim against Captain Bonis for intentional infliction of emotional distress. The trial court granted defendants' motion to dismiss as to all counts with prejudice.
We first address Fernander's claim the trial court erred in finding that Captain Bonis was entitled to qualified immunity as to Fernander's 42 U.S.C. § 1983 due process claims. The parties agree that immunity is unavailable under 42 U.S.C. § 1983 if the unlawful nature of the governmental official's action is apparent under pre-existing law. Wilson v. Layne, 526 U.S. 603, 614, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). "[Q]ualified immunity for government officials is the rule, liability and trials for liability the exception. A plaintiff suing a government official has the burden of showing that the official's acts, at the time, violated clearly established law." Alexander v. Univ. of N. Fla., 39 F.3d 290, 291 (11th Cir.1994).
Appellees argue that the existence of arguable probable cause supports the trial court's conclusion. An officer seeking qualified immunity relating to the issuance of an arrest warrant needs to show only that the arrest warrant was supported by "arguable probable cause." Brown v. Abercrombie, 151 Fed.Appx. 892, 893 (11th Cir.2005). "[P]robable cause exists when the circumstances are sufficient to cause a reasonably cautious person to believe that the person accused is guilty of the offense charged." Mailly v. Jenne, 867 So.2d 1250, 1251 (Fla. 4th DCA 2004)(quoting Fla. Game & Freshwater Fish Comm'n v. Dockery, 676 So.2d 471, 474 (Fla. 1st DCA 1996)). It is "judged by the facts and legal state of affairs that existed at the time of the arrest." Id.
In this case, Captain Bonis had Christian's identification of Fernander as "Steve," the man who had organized the cocaine deal and threatened to kill Christian's family. Christian was familiar with Steve before these events. Captain Bonis also had discovered that the cellular phone used by Steve was registered in Fernander's name. These facts were admitted in Fernander's complaint. Captain Bonis had not only arguable probable cause, but actual probable cause to seek an arrest warrant for Fernander. This result is unaffected by Fernander's allegation that Captain Bonis omitted Christian's comment "with a little more weight" from the probable cause affidavit and that Captain Bonis should have known from Butler's description that Fernander was not Steve. "The fact of the matter is that police officers making arrests `deal with probabilities'. . . ." Mills v. Town of Davie, 48 F.Supp.2d 1378, 1382 (S.D.Fla.1999). The trial court did not err in finding Captain Bonis possessed qualified immunity from suit.
We find no merit in Fernander's alternative Eighth Amendment claim against Captain Bonis in his individual capacity. Fernander based this claim on the allegation that Bonis's conduct resulted in Fernander's arrest and confinement in lieu of $250,000 bond in violation of his Eighth Amendment rights. Since Fernander did not allege Captain Bonis set or denied Fernander's bond, Captain Bonis could not be liable for an Eighth Amendment claim. *589 See Kohl v. Casson, 5 F.3d 1141, 1149 (8th Cir.1993)(holding Eighth Amendment claim properly dismissed where none of the defendants set Kohl's bail). We therefore affirm the trial court's ruling as to this issue.
Fernander next argues that the trial court erred in dismissing his § 1983 malicious prosecution claim. The Eleventh Circuit has recognized a federal malicious prosecution claim under section 1983 that requires the plaintiff prove the elements of common law malicious prosecution and a violation of the Fourth Amendment right to be free from unreasonable seizures. Kingsland v. City of Miami, 382 F.3d 1220, 1234 (11th Cir.2004).
The elements of a malicious prosecution claim are: (1) an original criminal or civil judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding against the present plaintiff as the defendant in the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damage as a result of the original proceeding.
Valdes v. GAB Robins N. Am., Inc., 924 So.2d 862, 866 n. 1 (Fla. 3d DCA 2006).
We have already held that there was probable cause to seek to arrest Fernander. The presence of probable cause under the facts Fernander alleges prevents him from being able to show the absence of probable cause. It also negates Fernander's ability to show malice. See Wood v. Kesler, 323 F.3d 872, 884 (11th Cir.2003)(finding that "[t]he existence of probable cause, and in particular the facts showing that probable cause, contradict any suggestion of malicious intent or bad faith.").
Fernander next asserts that the trial court erred in dismissing his state tort claims for false arrest and false imprisonment against the City of Miramar and Captain Bonis. As previously held, Captain Bonis had probable cause to seek to arrest Fernander. This operates to bar a state law claim for false arrest. See Rankin v. Evans, 133 F.3d 1425, 1435 (11th Cir.1998)(stating that probable cause constitutes an absolute bar to both state and section 1983 claims alleging false arrest); Mailly, 867 So.2d at 1251. In addition, the allegations of Fernander's complaint failed to satisfy section 768.28(9)(a), Florida Statutes. That statute provides that an officer may not be liable in tort for actions taken in the scope of their employment unless the officer "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." § 768.28(9)(a), Fla. Stat. (2005). Fernander's factual allegations did not establish that Captain Bonis acted outside the scope of his employment or with wanton or willful disregard of Fernander's rights. We affirm as to this issue.
Fernander next argues the trial court improperly dismissed his claims against the City and Detective Scarlett based upon the alleged negligent administration of the polygraph examination of Butler. Fernander's complaint alleged that a board certified polygraphist reviewed the information from Butler's polygraph examination and found the result inconclusive. Fernander asserted that a properly administered polygraph examination of Butler, who allegedly claimed that Fernander was not Steve, would have resulted in withdrawal of the arrest warrant. *590 We find no merit to this claim because Fernander has failed to establish that the police owed him a duty to conduct the polygraph examination of Butler in a non-negligent manner. See Pritchett v. City of Homestead, 855 So.2d 1164, 1165 (Fla. 3d DCA 2003)(recognizing that "negligent conduct of police investigations does not give rise to a cause of action because the duty to protect citizens and enforce the law is one owed generally to the public"); State v. Kowalski, 617 So.2d 1099 (Fla. 5th DCA 1993)(holding State Attorney's Office owed no duty of care to plaintiff arising out of its duty to enforce the laws and promote public safety). See also Trianon Park Condo. Ass'n v. City of Hialeah, 468 So.2d 912 (Fla.1985).
Lastly, we address Fernander's argument that the trial court improperly dismissed his claim against the City for negligent infliction of emotional distress. This claim was also based on Fernander's contention that the warrant for his arrest should have been withdrawn. The elements of a negligent infliction of emotional distress claim are: (1) the plaintiff must suffer a discernable physical injury; (2) the physical injury must be caused by the psychological trauma; (3) the plaintiff must be involved in the event causing the negligent injury to another; and (4) the plaintiff must have a close personal relationship to the directly injured person. LeGrande v. Emmanuel, 889 So.2d 991, 995 (Fla. 3d DCA 2004).
Appellees argue that Fernander's claim fails because he has not alleged physical injury to himself. Fernander acknowledges that a negligent infliction of emotional distress claim generally requires a plaintiff "must demonstrate that the emotional stress suffered flowed from injuries sustained in an impact." Hagan v. Coca-Cola Bottling Co., 804 So.2d 1234, 1237 (Fla.2001). Fernander argues his claim falls into an exception for emotional harm resulting from a prolonged period of wrongful incarceration.
Fernander relies on Rowell v. Holt, 850 So.2d 474 (Fla.2003). In Rowell, the plaintiff was wrongly arrested and confined and his attorney lost the document that would have freed him. 850 So.2d at 476. The plaintiff was incarcerated needlessly for over a week. Id. at 477. Plaintiff sued the attorney for malpractice. The trial court found that the "impact rule" did not apply, but the district court reluctantly applied the rule to reverse part of plaintiff's jury award. Id. The Florida Supreme Court reaffirmed the importance of the impact rule but stated the rule is not so rigid or unyielding that it must be blindly followed. Id. at 478. The court found an exception for the plaintiff's case but stressed that its holding was based on the unique circumstances of the case and the "special professional duty created by the relationship between Rowell and his attorney." Id. at 479.
This case does not involve the relationship between attorney and client as existed in Rowell, or any similar special professional relationship. The impact rule should be applied to Fernander's case. There was no special duty to Fernander, and he has not alleged any physical harm to himself or another. His negligent infliction of emotional distress claim must fail.
We accordingly affirm the Final Judgment entered in this case. We decline to address other issues brought by appellant but not discussed in this opinion.
Affirmed.
STONE and HAZOURI, JJ., concur.