[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-14473
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cv-22472-MGC

JACKIE JAMAL HINES,

Plaintiff-Appellant,

versus

WEXFORD HEALTH SOURCES, INC.,
DR. CARL BALMIR,
DR. ROBERT SMITH,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(September 9, 2019)

Before WILSON, WILLIAM PRYOR and HULL, Circuit Judges.

PER CURIAM:

Jackie Hines, a federal prisoner, appeals *pro se* the partial dismissal of and partial summary judgment against his amended complaint against Wexford Health Sources, Inc., the medical services provider at the Everglades Correctional Institution, and two Wexford employees, Dr. Carl Balmir and Dr. Robert Smith. 42 U.S.C. § 1983. Hines alleged that the doctors were deliberately indifferent to his medical needs when they denied him additional physical therapy and an orthopedic examination to address the pain and loss of motion in his right arm. Hines's complaint included claims of vicarious liability against Wexford and a claim of negligent infliction of emotional distress against the doctors, but Hines has abandoned any challenge that he could have made to the dismissal of those claims. *See Waldman v. Conway*, 871 F.3d 1283, 1289 (11th Cir. 2017). Hines challenges the dismissal of his claim of medical malpractice against the doctors for omitting a corroborating medical opinion from his notice to sue, *see* Fla. Stat. § 766.203, and the summary judgment against his claim of deliberate indifference against the doctors. We affirm the summary judgment in favor of the doctors. But because Wexford's failure to provide medical records waived the requirement to provide medical corroboration, *see id.* § 766.204(1)-(2), we vacate the order dismissing Hines's claim of medical malpractice and remand for the district court to consider whether Hines undertook a good faith investigation to ensure that he had a reasonable claim against the doctors, *see id.* § 766.203(3).

2

## I. BACKGROUND

A year and a half before Hines arrived at Everglades Correctional Institute, he fractured his right elbow during a jailhouse basketball game and promptly underwent surgery followed by physical therapy. On June 13, 2013, Hines visited the prison clinic at Everglades Correctional Institution complaining of pain and stiffness in his arm. Nurse Practitioner Loretta Dawson gave Hines Tylenol and instructed him to perform strengthening exercises. Hines requested to see an orthopedist. On June 13, 2013, Nurse Practitioner Dawson filed a consultation request to refer Hines to an orthopedist and to a physical therapist. Dr. Balmir, the medical director at Everglades, forwarded Nurse Practitioner Dawson's request to Dr. Smith, the director of the utilization collegial review unit. Under the collegial review process, Dr. Smith made treatment decisions after examining Hines's medical records and conferring with Dr. Balmir and Nurse Practitioner Dawson. Dr. Smith approved Nurse Practitioner Dawson's request to refer Hines to a physical therapist, denied as medically unnecessary the request to refer Hines to an orthopedist, and ordered a reevaluation if physical therapy proved ineffective.

On June 28, 2013, Prida Maylor recommended that Hines undergo eight sessions of physical therapy and see an orthopedist. Nurse Practitioner Dawson filed a consultation request containing Maylor's recommendations, which Dr. Balmir forwarded to the collegial review unit. After Dr. Smith conferred with Dr.

3

Balmir and Nurse Practitioner Dawson, Dr. Smith approved eight sessions of physical therapy, but he denied Hines a referral to an orthopedist.

After Hines attended four sessions of physical therapy, the therapist recommended that Hines receive six additional sessions to improve his range of motion and strength. Nurse Practitioner Dawson filed a consultation request for additional physical therapy while Hines completed his remaining sessions. On August 5, 2013, Dr. Smith denied the request for additional physical therapy and ordered that Hines, who the therapist had trained to perform his exercises independently, continue his therapy under the supervision of prison staff. On August 8, 2013, Nurse Practitioner Dawson told Hines about the decision.

Hines was transferred to Taylor Correctional Institution on November 22, 2013, and to Liberty Correctional Institution on May 5, 2014, without incident. On June 18, 2014, Hines had his arm x-rayed. The image showed no significant abnormalities in Hines's forearm or elbow.

On October 27, 2015, Hines filed *pro se* a complaint against Wexford, Dr. Balmir, and Dr. Smith, which Hines later amended. 42 U.S.C. § 1983. Hines complained that Dr. Smith exhibited deliberate indifference to his medical needs by rejecting Nurse Practitioner Dawson's request for an orthopedist and for physical therapy. Hines also complained that Dr. Balmir acted with deliberate indifference by rejecting the physical therapist's recommendation for additional

4

physical therapy. In addition, Hines complained that Wexford was vicariously liable for its employees' alleged violations of his rights and that each doctor was liable for medical malpractice and for the negligent infliction of emotional distress in violation of Florida law. Hines attached to his complaint his prison grievances, his requests in 2011 for medical records, a form allowing Wexford to release his medical records, and his notice to sue Wexford and its employees for medical malpractice.

A magistrate judge recommended dismissing all of Hines's claims except those against the doctors for deliberate indifference. *See* 28 U.S.C. § 1915(e)(2). The magistrate judge concluded that Wexford was not a person or entity capable of being sued under the federal civil rights statute. The magistrate judge also concluded that Hines failed to state a claim for negligent infliction of emotional distress because he did not allege that another person incurred an injury that caused his psychological trauma. *See Fernander v. Bonis*, 947 So. 2d 584, 590 (Fla. Dist. Ct. App. 2007). The magistrate judge recommended the dismissal of Hines's claim of medical malpractice based on his noncompliance with a pre-suit screening requirement that he attach a corroborating medical opinion to his notice to sue. *See* Fla. Stat. §§ 766.104, 766.203, 766.206.

Hines objected to the dismissal of his claim of medical malpractice. He argued that he had no obligation to provide a corroborating medical opinion

5

because Wexford failed to provide medical records that he requested. *See id.*
§ 766.204(1)-(2).

The district court found the magistrate judge's report "clear, cogent, and compelling." The district court adopted the report after it considered Hines's "complaint and objections, the relevant legal authority and . . . made a *de novo* review of the record."

The doctors filed a motion for summary judgment and supporting affidavits. Dr. Smith averred that he used his medical judgment and experience when considering the consultation requests, that Nurse Practitioner Dawson concurred in his decisions, that he decided an orthopedist was medically unnecessary unless one was requested by Hines's clinician or Hines's condition worsened, and that Hines filed no consultation requests after completing physical therapy. Dr. Balmir averred that he performed administrative tasks related to prisoner medical care and that the site clinician and the collegial review unit made all decisions involving prisoners' medical treatment.

The district court entered summary judgment in favor of the doctors. The district court ruled that Dr. Smith made a medical judgment when denying the request to refer Hines to an orthopedist and that the doctor was entitled to reject the recommendations of "medical professionals that held inferior degrees." The district court discredited Hines's allegations that he had been warned his arm would be

6

permanently impaired unless he saw an orthopedist and received additional sessions of physical therapy based on Maylor's and the physical therapist's written recommendations. The district court also ruled that the undisputed evidence established Dr. Balmir was not "personally involved in making medical decisions relative to [Hines's] plan of care and course of treatment [or created policies affecting prisoners' care and treatment] as required to establish a claim of deliberate indifference."

## II. STANDARD OF REVIEW

One standard of review governs this appeal. We review *de novo* a *sua sponte* dismissal. *Dimanche v. Brown*, 783 F.3d 1204, 1214 (11th Cir. 2015). We also review *de novo* a summary judgment. *Nam Dang by & through Vina Dang v. Sheriff, Seminole Cty. Fla.*, 871 F.3d 1272, 1278 (11th Cir. 2017).

## III. DISCUSSION

Hines raises two arguments on appeal. First, Hines argues that his claims against the doctors for medical malpractice should not have been dismissed based on his failure to comply with pre-suit screening requirements. *See* Fla. Stat. § 766.204. Second, Hines argues that his claims of deliberate indifference should survive summary judgment because Dr. Smith refused him additional medical care and because Dr. Balmir "directed subordinates to act unlawfully or knowingly failed to intervene in any unlawful conduct."

7

*A. The District Court Erred By Dismissing Hines's Claims Against Doctors Balmir and Smith for Medical Malpractice.*

In Florida, a claimant seeking to recover for medical negligence must substantiate his claim before filing his lawsuit. Fla. Stat. § 766.203. The claimant must conduct "a reasonable investigation as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in [his] care or treatment . . . ." *Id.* § 766.104(1); *see id.* § 766.203(2). The claimant also must obtain an affidavit from a medical expert establishing that "reasonable grounds [exist] to support the claim of medical negligence." *Id.*; *see id.* § 766.104(1) ("good faith may be shown to exist if the claimant . . . has received a written opinion . . . of an expert . . . that there appears to be evidence of medical negligence"). And the claimant must attach the corroborating medical opinion to his notice of intent to sue. *Id.* § 766.203(2).

A claimant who is denied medical records is excused from providing a corroborating medical opinion. The custodian of medical records must supply copies of those records "at a reasonable charge within 10 business days of [the claimant's] request" even if "a medical bill is still owing." *Id.* § 766.204(1). A "[f]ailure to provide copies of such medical records . . . constitute[s] evidence of . . . [non]compl[iance] with good faith discovery requirements and . . . waive[s] the requirement of written medical corroboration by the requesting party." *Id.* § 766.204(2).

8

In any event, an action for medical negligence is vulnerable to dismissal unless it "rests on a reasonable basis." *Martin Mem. Med. Ctr, Inc. v. Herber*, 984 So. 2d 661, 663 (Fla. Dist. Ct. App. 2008) (citing Fla. Stat. § 766.206).  The waiver does not "dispense[] with the requirement of a good faith investigation . . . ." *Id.* at 664. To survive a motion to dismiss, the claimant must prove that he "conducted a good faith investigation and has a reasonable claim without a corroborating affidavit . . . ." *Id.*; *see* Fla. Stat. § 766.206(2).

The district court erred by *sua sponte* dismissing Hines's claim of medical malpractice against the doctors. *See* 28 U.S.C. § 1915(e). The district court overlooked Hines's allegation, which we must accept as true, *see Dimanche*, 783 F.3d at 1214, that Wexford failed to provide medical records. The district court also failed to consider whether the pre-suit screening rules relieved Hines of his obligation to provide a corroborating medical opinion after being denied his medical records. *See* Fla. Stat. § 766.204(2). And the district court prematurely dismissed Hines's claim without evaluating his investigation and the basis for his claim in the absence of a corroborating opinion. *See Martin Mem.*, 984 So. 2d at 664. We vacate the order that dismissed Hines's claim of medical malpractice and remand with instructions for the district court to determine whether Hines conducted a reasonable investigation and had "grounds for a good faith belief that there ha[d] been negligence in [his] care or treatment," Fla. Stat. § 766.104(1).

9

*B. The District Court Did Not Err By Entering Summary Judgment in Favor of the Doctors and Against Hines's Claims of Deliberate Indifference.*

The doctors do not dispute that the Hines had an objectively serious medical need, so our decision turns on whether they acted with deliberate indifference to that need. Hines had to prove that the doctors were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" by refusing to refer him to an orthopedist and by denying him additional physical therapy and that they knew their chosen treatment was unsound. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). To prove deliberate indifference, Hines had to prove the doctors provided "grossly inadequate care," decided to use "an easier but less efficacious course of treatment," or provided "medical care so cursory that it amounted to no treatment at all." *See Melton v. Abston*, 841 F.3d 1207, 1223 (11th Cir. 2016).

Hines failed to establish that Dr. Smith acted with deliberate indifference to his medical needs. The doctor's decision to deny Hines an orthopedic examination and additional sessions of physical therapy does not reflect that Hines received "medical care . . . so cursory as to amount to no treatment at all." *See Nam Dang*, 871 F.3d at 1280 (quoting *Mandel v. Doe*, 888 F.2d 783, 789 (11th Cir. 1989)). Nor was the treatment that Hines received "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See id.* (quoting *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986)). Hines

10

received physical therapy. The physical therapist stated that Hines would "benefit from 6 more visits for PT services," but Dr. Smith's contrary conclusion was a matter of medical judgment, which does not rise to the level of deliberate indifference. *See Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) (requiring more than "a simple difference in medical opinion" for deliberate indifference). And Hines's treatment proved effective. Hines requested no additional treatment after completing his physical therapy. What's more, an x-ray later taken of Hines's arm showed no significant abnormalities.

No basis exists to support the claim against Dr. Balmir for deliberate indifference. Dr. Balmir made no decisions involving Hines's treatment, so for supervisory liability to exist, Hines had to establish a causal connection between Dr. Balmir's inaction and the alleged violation of Hines's constitutional rights. *See Keith v. DeKalb Cty., Ga.*, 749 F.3d 1034, 1047 (11th Cir. 2014). Because, as stated above, Dr. Smith did not violate Hines's rights, there can be no supervisory liability.

## IV. CONCLUSION

We **AFFIRM** the summary judgment in favor of the doctors and against Hines's claim of deliberate indifference, but we **VACATE** the order that dismissed Hines's claim of medical malpractice against the doctors and **REMAND** for further proceedings.

11